Good morning, it's case number 4-18-0358, Durbin v. Flavorchem et al. And counsel, could you state your appearances for the record, please? John Hoffman, D.A. for the plaintiff. Thank you. Brad Edward for Flavorchem. Diane Verrier, D.A. for the plaintiff. All right, thank you. For the appellees, is there an agreement as to who's going to be arguing? I'm going to be arguing. All right, thank you, Mr. Ellworth. Mr. Popov, are you ready to proceed? I am ready. Good morning again, Your Honors. Good morning. I would like to be certain that we're focused on the right conduct in this particular case. This is a matter that was appealed from a summary judgment order entered by Judge Tom Little of Macon County based completely and totally on a document, an order that was prepared in a workers' compensation matter that has some tangential relationship to this gentleman and his claims. But my understanding of the law in summary judgment review cases is that this court should look to see and must give heavy weight to all well-pledged pleadings. There is no allegation that the pleadings in this case were deficient in any way. Had this matter been tried first in front of Judge Little, there's no doubt in my mind that it would not have been determined on a summary judgment. If you look at the 10-page report of the arbitrator, it's 10 pages of conflicts in testimony between expert witnesses or the plaintiff. The arbitrator made a specific finding that the plaintiff was not credible. These are things that would never have been introduced into the case before Judge Little, and I appreciate that we're here because of a claim of collateral estoppel. Well, our jurisprudence looks very narrowly at such matters. Mr. Durbin had a right to a jury trial on the strict liability claims that he was making against the manufacturers of these products. He was denied that jury trial as a result of the order by Judge Little. We'll never have the opportunity to do that again, and I would suggest to the court that none of the cases cited in any of the briefs are directly on point to this situation, and I suggest that the reason that is is that it would be extremely rare for a trial judge to base a decision on summary judgment on an unrelated matter that was held by the parties, in this case in a workers' compensation matter. So I think the focus this morning needs to be on what Judge Little's responsibilities were. Our system of jurisprudence is not based upon convenience or economy or efficiency. It's to be based upon evidence brought before a jury that was impaneled by the court for that particular purpose, and I would suggest to the court that Mr. Durbin and his family was denied that right as a result of this particular matter, and I don't believe that any of the findings of the arbitrator would be controlling much less admissible before the circuit court in a strict liability case. Mr. Papa, may I ask a few clarifying questions here? Sure. Is it true that the claimed exposure in the occupational disease case was plaintiff's exposure to, is it diacetyl or diacetyl? I've heard it pronounced different ways, but diacetyl is the pronunciation I think is most common. So Mr. Durbin's exposure to diacetyl at the ADM plant, that was the occupational disease case, right? That was the occupational disease case, correct. And in the product liability case, it's the identical exposure being claimed to have caused his respiratory problems. Well, that would cause some speculation on my part. As what? Because who knows what could have happened when that case may have been tried. There may be additional information that is obtained. I'm sorry. If I'm unclear, please tell me. But what is plaintiff's claim in the product's liability case in terms of the alleged exposure? Is it the same exposure that was alleged to have occurred in the occupational disease case? I would concede that, yes, Your Honor. Okay. Thank you. I'm just trying to get a sense of if we're talking apples to apples in terms of the claims, then when it comes to the issue of collateral estoppel, there are several elements that have to be satisfied for a defendant to be able to assert collateral estoppel. Which elements in this case are you claiming have not been met by defendants? We believe that there are separate and distinct issues that would have been brought before a circuit court jury that were not necessarily able to be brought before the arbitrator. The jury would have made the factual determinations, not the arbitrator. And the arbitrator in this case obviously made very strong opinions known in his decision. However, that's not to say that someone else might have other opinions. The experts that were submitted to in that case, he discounted the expert testimony that was presented by the petitioner, by the plaintiff. And we believe that had he ruled otherwise, we certainly wouldn't be here in this situation. Our system of jurisprudence provides for plaintiffs to have multiple opportunities for recovery. There are multiple types of cases filed in workers' comp where there's a third-party case filed as well. And we don't have a citation that I recall in the briefing in this case where the facts are very similar. But our system of jurisprudence allows a person to make multiple claims against multiple parties in different venues. And we have concepts like set-offs and set-asides and things of that sort, so that the person making the claim is not unjustly enriched as a result of multiple claims. In this particular case, we have suggested in our briefing that there were issues that should have been considered by Judge Little as being not identical to the issues and the conclusions of the arbitrator. But I would suggest that it's the arbitrator's strong opinions that served as the basis for Judge Little's ruling, and I don't believe that that is appropriate at all. Mr. Poppe, the specific question that Justice Harris, Presiding Justice Harris asked you was what elements of collateral estoppel were not satisfied here. And I'm not sure you explicitly answered that. Could you go back to try to be more specific in what your response would be to his question? I would point out that what Judge Little relied upon was this determination made by a third party, the arbitrator. And based upon those observations, those factual determinations that he clearly sets forth within his order as the basis for establishing anything before Judge Little. So I don't believe that that's appropriate. I think that distinguishes this matter and distinguishes the two cases because you should not be using the determination of one trial of fact in a case where there's a different trial of fact that is provided for under the law. There are a number of scenarios involving different finders of fact based on the same substantive claim. You can say that you have a police officer who is requesting a duty disability determination and a pension board or a police pension board makes a determination. And that can be binding then on a subsequent claim, perhaps in a workers' compensation setting, where you have a final adjudication on the merits. So there are these scenarios where you have one fact finder making a determination on an issue that may be pertinent in a separate claim before a separate tribunal and can serve as collateral estoppel on that issue in that separate proceeding. Do you acknowledge that? I do. The Demske case that is cited, I think in both briefs, talks about a similar situation where there was a question as to whether a person was injured in the line of duty. And that was the question that the pension board addressed and made a finding that was different than the other claim that was pending. And they attempted to use that. The court distinguished a line of duty pension determination from a work-related injury situation. But I do believe that this court is faced with a unique situation in this case, where it's clear that the circuit judge relied very heavily and it was suggested to the judge that the reason that the judge should adopt the findings, in essence adopt the findings of the arbitrator, is because the arbitrator reached certain findings in his deliberation and foreclosed the plaintiff from pursuing a third-party action against other parties other than his employer. Thank you, Your Honors. Thank you, Mr. Poppe. Mr. Elwood. Thank you. Good morning. Again, I'm Brad Elwood on behalf of the labor camp. Today, I'm joined by Diane Goddard, who's representing Javadin Labors. Your Honors, we're asking you to affirm the summary judgment that was entered in favor of our clients based on the doctrine of collateral estoppel. And I note the question that was asked earlier of counsel was, what are the elements of collateral estoppel? Well, you have to have the similarity of parties, or with collateral estoppel, the party that you're trying to enforce the doctrine against must be the same as in the prior litigation. You've got to have the similarity or identity of issues. And you have to have a final judgment. When we look at the brief that was filed in this case, counsel has admitted that we have identity of party and we have a final judgment. And the remarks that were made earlier in counsel's opening remarks on behalf of the plaintiff acknowledge that the issues are the same. This is a classic case of application of collateral estoppel where we have a prior decision on an issue that overlaps. And I'd like to say that the key here to this analysis is the identity of the issues between the two claims. And central to each of those claims, regardless of whether we call it a product liability action, a negligence action, or a worker's compensation case, is the notion of causation. And in a civil case, as you know, causation is referred to as proximate cause. In a comp case or an ODA case, it's referred to as a rising out of the employment. The analysis that was done in the worker's compensation case focused on the causation aspect and asked the simple question, was Mr. Durbin's respiratory illness caused by his exposure to butter flavorings containing the diacetyl while working at ADM? And the answer to that was no. Now, counsel has made a number of remarks in his brief about different aspects of a product's liability case, different aspects of a comp case. In other words, well, there's TDD in a work comp case, there's permanency in a comp case, there's all those types of issues. Those are different than the product's liability issues. Yeah, they are. But the core element that transpires between the two is the need to establish causation. And we did cite a case in our brief, the Owen case, which is the exact opposite of what we have here, where the civil case had actually gone to judgment first. And it was applied in a collateral estoppel setting against a worker's compensation case. And that's interesting because the standards are slightly different. In the worker's compensation context, the standard is could the event might or could be a factor. That's a very, very liberal standard. And even under that standard, this commission determined in a lengthy decision that the condition was not caused by an exposure. Mr. Elwood? Yes. We have the occupational disease claim and we have the product's liability claim. Mr. Papa indicated that it's the identical exposure being claimed in both claims, correct? Correct. What is it that was claimed to have been caused in the occupational disease claim? And what is it that is claimed to have been caused in the product's liability claim? Just take that question first. I think in the product's liability claim, based on my reading of the pleadings, which the court has before it, he's alleging a respiratory condition. He was alleging a respiratory condition in the worker's compensation case. And they discussed it in two different contexts. First was in relation to COPD, which they determined, the commission determined, was caused by smoking, a family history, obesity at the time, and his smoking history that he had put in the medical records. The other condition was the bronchiolitis obliterans, the BO condition, popcorn worker's lung, that the commission discussed. Whether it was caused by the alleged exposure to this chemical, diacetyl. And so the commission looked at those two aspects and said, neither of those conditions are caused, based on the evidence before it, are caused by this exposure. And I think you could even read that decision to say that the commission found it highly unlikely that his exposure was even a sufficient exposure, making some assumptions most favorable to the plaintiff in that case. When you read through the commission's decision, it seems to go, even if we would consider, we still find. And they do that in a number of different situations. So I think the commission case was looking at the whole of the respiratory issue as it was presented. Well, the commission determined that he did not suffer an occupational disease caused by his diacetyl exposure. And I want to just be very pinpoint focused on what the claimed injury was in the Occupational Disease Act and compare it with what is claimed in the Product Reliability Act, because we have to have identical injuries being claimed in order to apply collateral estoppel. Well, again, I point to the worker's compensation claim. And they clearly discussed his condition, his respiratory condition in the context of COPD. That's clear. And they found, according to the commission, no generally accepted science relating COPD to the diacetyl exposure. They found also, according to the evidence in the comp case, they concluded that the exams that were studied, that were performed, the studies that were done, the imaging studies, all had and supported the criteria for relating that to smoking. So that was one of the aspects. The other aspect that they dealt with was the BO, the Popcorn Worker's Lung. And they talked at great length about whether or not that was present, about whether that could be related. So those are the two respiratory problems that they highlighted. They also talked about, generally, the pulmonary function tests. And they talked about the context of what did those mean. Did they show a deterioration? Did they show a decrease? And the commission concluded in the comp case that the pulmonary function tests were not supportive of anything that would relate to the exposure to butter flavors containing diacetyl. And they also said that they were more consistent with the development of a smoking-related COPD. I don't think there was any. The commission, from the way I read the decision, and portions of the materials in there from the appellate court, was looking at the respiratory condition as a whole and essentially trying to figure out, well, what is the condition? And they went through multiple conditions and said that they're just not related. So what can you say about what is claimed in the product liability case as injury? Well, in the product liability case, again, we're looking at the complaint and we're going on the basis of the allegations. But when I look at paragraph 14, which is at C-339 of the record, as a direct and proximate result of the foregoing negligent acts and omissions, the plaintiff, Michael Durbin, was exposed to defender's natural and artificial butter flavorings and has suffered severe permanent and progressive damage to his lungs, respiratory system, and other respiratory illnesses. And then it goes on to talk about some of the more specific implications of that. So they look to be identical based on the allegations of the complaint and when we look at the commission's decision. At the summary judgment proceeding or in the platings related to summary judgment, did plaintiffs assert that there was a different injury being claimed as a result of the exposure to the diacetyl? No, I did not gather that from that. And I look back through the response that was filed. It was always argued in the generic. I mean, the most, I think, significant thing that they kind of allude to is that they've obtained a new doctor and they identify, I believe, the doctor by name and said that the plaintiff is going to a new position. But I don't think that makes any difference because they didn't offer any evidence to indicate what the doctor might have said. If you step back and look at the three elements of collateral sample and apply those, the courts have also said, well, we're not going to apply it even if we have all those met where there's not a full and fair opportunity to be heard in the prior case. And they allude to that argument in their brief. They didn't really talk as much about it at the oral argument today. But it really relates back to the doctor's identity and the response to the motion for summary judgment. And I think we, first of all, I don't think there's any law that justifies, in this case, allowing someone to have a second bite. I mean, you try a case. You're not entitled to a perfect trial. You're entitled to a fair trial. You have to have appropriate incentive in the first case in order to be able to try the case. For example, if there's a liability issue in the first case and the dollars are only $50 at issue, maybe somebody isn't going to be as aggressive in pursuing that case on an issue as they would if we're talking about $15 million. And so would it be fair in that scenario, even though you have the elements of collateral estoppel present to apply that? Maybe not. But we don't have that here. We don't have that situation. We have a very strong incentive in the workers' compensation case to present that case. And they did. And if you remember, when you read the transcript of the hearing that took place in this case before the circuit court, one of the things that counsel goes on about is we just didn't go out and hire some general practitioner who was going to come in and offer a fly-by-night opinion. They went to SIU, if I recall, and obtained someone that they deemed to be a valued expert on this type of exposure, on this type of conditions, and they presented that. They aggressively pursued the litigation. And so I think that demonstrates that they fully intended to pursue that case, and they did. Fourteen-page decision by the commission, citing a number of authorities, I think is a very well-reasoned decision. And it shows that this wasn't just something where they brought the petitioner in. He testified about a couple things, and the employer denied it, and the case was closed. That's not what happened. This was a very heated discussion between the various experts. And again, I think that goes to establish that they had the opportunity. They took the opportunity. They had the incentive. The other aspect of that I want to point out is that even if you were somehow inclined to say, well, maybe medical literature has changed in the time, they haven't offered anything that says it did. Again, counsel was critical about this case being disposed of on summary judgment. In federal court, they like to say summary judgment is your put-up-or-shut-up moment. You have to present facts. You can't rely on the status of your pleadings. You've got to present evidence that shows that there's a material dispute, or you've got to have a legal argument that opposes the other argument, and it's perfect. We don't have that here. At best, if you look at their response to the summary judgment, they say, well, we got a new doctor. They don't say what the doctor's opinions are. They don't say the doctor went ahead and did a lung biopsy, and the lung biopsy came back and was positive. They didn't do that. They didn't attach any expert reports that say, here's a new expert in this area that says there's a connection of some sort. I apologize for interrupting, but I want to make sure I understand your argument here. Even if they had done that before the circuit court, you would have objected to that, saying that this issue has previously been determined. No matter what evidence may have been produced following the commission's decision, it's not relevant to our determination of collateral itself, because that determination is fixed in time as the moment the commission's decision became final. I agree. We would have made a legal argument as to whether or not they could even bring that up because of the application of the collateral estoppel principles, and then we would have countered that, as I just said. That's where an offer of proof would have come in. We would have objected. If the trial court allowed it, I would have a complaint. If the trial court said, no, I'm not going to allow that for all the legal principles, then they would have done an offer of proof to say, well, this is what it would be, so the appellate court could look at it. Didn't do that. Didn't do that at all. So my point is, if you're going to say, as they allude to in their brief, that maybe medical technology has changed, the theories have changed, the doctors' opinions have changed, you've got to tell them what they are, and they never do that, and that's important because we're looking at a summary judgment where their obligation is to meet that with facts showing they didn't do that. So even if you assume that there's a way that you could go back and look at this and say, well, things have changed, we're going to reopen, they haven't presented any basis for you to do that, and that's my point. That's why I hope I didn't run on too much, but that's my point I was trying to make. Again, we think that this comes back to the concept, causation is central to both cases. They have an opportunity. It was an opportunity that they pursued aggressively. They had an incentive, and the commission said, and the appellate court said, no, there's not a compensable claim, and the basis of that was that there was no causation. Now, applying that to this case in a civil context, causation is part and parcel of every claim they're trying to make, and it's been litigated, and that's why we're asking the court to affirm the summary judgment in this case. I don't want to get into a discussion of the facts of the work compensation decision, but I would encourage the court to study that closely and the reasons that were offered and the full analysis that was done, and I know Justice Harris was on the panel of that court that cited that case on the appeal. I would encourage you to look at that to get a full flavor of really what the nature of that dispute was and the breadth of that dispute, and I think when you do, you'll see why the circuit court was correct in here in finding the collateral and estoppel bars. Again, we presented the Owens case. It's just the opposite situation where the civil case happened to go to litigation first, and they eventually ruled that that barred the workers' compensation case. We could have been faced with the same situation here, but ours was just the opposite. So while there's not a case that we cited that's 100 percent squarely, I think Owens is the one that we point to to say, there's your framework. Thank you. Thank you, Mr. Edwards. Mr. Popham, rebuttal argument? Judge, I think counsel was very straightforward when he made reference to this is what would happen in the federal court. They'd love to be in the federal court, but they're not. They're in the state of Illinois court, and in Illinois, summary judgments are not given out as frequently, on my research, as in the federal court. Illinois believes in the right of a person to be adjudicated in court before a jury of his or her peers. This was denied this man based upon I believe it's a 14-page discussion of the conflicts that exist in the evidence of the case related to causation, related to treatment, related to any number of issues. But this man, his family, they should be entitled to a fair and full hearing, not just a fair hearing, but a full hearing before a jury of their peers. And they've been denied that based upon direct findings made by an arbitrator that were clearly and completely relied upon by the defendant and adopted by the trial court. Thank you very much. Thank you, Mr. Popham. Thank you both. The case will be taken under advisement. The written decision shall issue.